Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
LEONEL CRUZ, DANIEL GUERRERO and JAVIER
ROMERO *individually and on behalf of others*
*similarly situated,*

                        *Plaintiffs,*

                  -against-

ALPINE CLEANERS INC. (d/b/a ALPINE
CLEANERS & LAUNDROMAT), MAN SOO KIM
and KAP KIM

                    *Defendants.*
----------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Leonel Cruz, Daniel Guerrero and Javier Romero  , individually and on behalf of

others similarly situated ("Plaintiffs"), by and through their attorneys, Michael Faillace &

Associates, P.C., allege upon information and belief, and as against each of Defendants Alpine

Cleaners Inc. (d/b/a/ "Alpine Cleaners & Laundromat") ("Defendant Corporation") Man Soo

Kim and Kap Kim  (collectively, "Defendants"), as follows:

<u>**NATURE OF ACTION**</u>

      1.      Plaintiffs are former employees of Defendants Alpine Cleaners Inc. (d/b/a/ Alpine

Cleaners & Laundromat), Man Soo Kim and Kap Kim.

      2.      Alpine Cleaners & Laundromat is a full service dry cleaner/laundromat owned by

Man Soo Kim and Kap Kim, located at 25 St. James Place, New York, NY 10038.

1

3.     Upon information and belief, Defendants Man Soo Kim and Kap Kim serve or served as owners, managers, principals or agents of Defendant Corporation and through this corporate entity operate or operated the full service dry cleaner/Laundromat as a joint or unified enterprise.

4.     Plaintiffs worked long days in a full service dry cleaner/laundromat located at 25 St. James Place, New York, NY 10038.

5.      Plaintiffs performed the duties of pressing, ironing and dry cleaning clothes.

6.     Plaintiffs regularly worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for any of the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay, or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

10.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq*., and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor (the "spread of hours order" and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-1.6), including applicable liquidated damages, interest, attorneys' fees and costs.

12.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

14.    Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their business in this district, and Plaintiffs were  employed by Defendants in this district.

## PARTIES

*Plaintiffs*

15.    Plaintiff Leonel Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Bronx County, New York. Plaintiff Cruz was employed by Defendants from

approximately March 2011 until on or about June 2014. At all relevant times to this complaint, Plaintiff Cruz was employed by Defendants to press clothes.

16.    Plaintiff Daniel Guerrero ("Plaintiff Guerrero" or "Mr. Guerrero") is an adult individual residing in Bronx County, New York. Plaintiff Guerrero was employed by Defendants from approximately August 2006 until on or about February 18, 2017.  At all relevant times to this complaint, Plaintiff Guerrero was employed by Defendants to dry clean and press clothes.

17.    Plaintiff Javier Romero ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Bronx County, New York. Plaintiff Romero was employed by Defendants from approximately May 13, 2013 until on or about February 18, 2017. At all relevant times to this complaint, Plaintiff Romero was employed by Defendants to iron clothes.

18.    Plaintiffs consent to being  representative parties pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

19.    Defendants own, operate and/or control a full service dry cleaner/laundromat at 25 St. James Place, New York, NY 10038.

20.    Upon information and belief, Defendant Alpine Cleaners Inc. (d/b/a "Alpine Cleaners & Laundromat" or "Defendant Corporation") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 25 St. James Place, New York, New York 10038.

21.     Defendant Man Soo Kim is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Man Soo Kim is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. Defendant Man Soo Kim possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Man Soo Kim determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

22.     Defendant Kap Kim is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Kap Kim is sued individually in her capacity as an owner, officer and/or agent of Defendant Corporation. Defendant Kap Kim possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Kap Kim determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**
*Defendants Constitute Joint Employers*

23.     Defendants operate a full service dry cleaner/laundromat located in the Two Bridges section of Manhattan.

24.    Individual Defendants Man Soo Kim and Kap Kim possess operational control over defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

25.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

26.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

27.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals) employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

28.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

29.    Upon information and belief, individual Defendants Man Soo Kim and Kap Kim operate Defendant corporation as either an alter ego of themselves, and/or fail to operate Defendant corporation as a legal entity separate and apart from themselves by, among other things:

(a)    failing to adhere to the corporate formalities necessary to operate Defendant corporation as a separate and legally distinct entity;

(b)    defectively forming or maintaining Defendant corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

(c)    transferring assets and debts freely as between all Defendants;

(d)    operating Defendant corporation for their own benefit as the sole or majority shareholders;

(e)    operating Defendant corporation for their own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)    intermingling assets and debts of their own with Defendant corporation;

(g)    diminishing and/or transferring assets of Defendant corporation to protect their own interests; and

(h)    Other actions evincing a failure to adhere to the corporate form.

30.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

31.    Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

32.    In each year from 2011 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

33.    In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were used in the full service dry cleaner/laundromat on a daily basis were produced outside of the State of New York.

7

*Individual Plaintiffs*

34.     Plaintiffs are former employees of Defendants, primarily employed in performing the duties of pressing, ironing and dry cleaning clothes.

35.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Leonel Cruz*

36.     Plaintiff Cruz was employed by Defendants from approximately March 2011 until on or about June 2014.

37.     At all relevant times, Plaintiff Cruz was employed by Defendants to press clothes.

38.     Plaintiff Cruz regularly handled goods in interstate commerce, such as pressing or ironing machines necessary to perform his work that were produced outside of the State of New York.

39.      Plaintiff Cruz's work duties required neither discretion nor independent judgment.

40.     Throughout his employment with Defendants, Plaintiff Cruz regularly worked in excess of 40 hours per week.

41.     From approximately March 2011 until on or about June 2011, Plaintiff Cruz worked from approximately 8:00 a.m. until on or about 4:00 p.m. Mondays through Saturdays (typically 48 hours per week).

42.     From approximately July 2011 until on or about October 2011, Plaintiff Cruz worked from approximately 8:00 a.m. until on or about 6:00 p.m. Mondays through Saturdays (typically 60 hours per week).

43.    During the years 2011, 2012, 2013 and 2014, Plaintiff Cruz  worked from approximately 8:00 a.m. until on or about 4:00 p.m. Mondays  through Saturdays during the months of November through May(typically 48 hours per week).

44.    During the years 2011, 2012, 2013 and 2014, Plaintiff Cruz worked from approximately 7:30 or 8:00 a.m. until on or about 5:30 or 6:00 p.m. Mondays through Saturdays during the months of June through October (typically 57 to 63 hours per week).

45.    Throughout his employment with defendants, Plaintiff Cruz was paid his wages in cash.

46.    From approximately March 2011 until on or about December 2011, defendants paid Plaintiff Cruz a fixed salary of $450 per week.

47.    From approximately January 2012 until on or about June 2014, defendants paid Plaintiff Cruz a fixed salary of $470 per week.

48.    Plaintiff Cruz's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

49.    In fact, Defendants required Plaintiff Cruz to start working 30 minutes prior to his scheduled start time and continue working two hours past his scheduled stop time almost every day during the months of June through October and did not pay him for the extra time he worked.

50.    Defendants did not provide Plaintiff Cruz with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

51.    Defendants did not provide Plaintiff Cruz with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

52.    Defendants never provided Plaintiff Cruz with a written notice, in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Daniel Guerrero*

53.    Plaintiff Guerrero was employed by Defendants from approximately August 2006 until on or about February 18, 2017.

54.    At all relevant times, Plaintiff Guerrero was employed by Defendants to do pressing of clothes.

55.    Plaintiff Guerrero regularly handled goods in interstate commerce, such as detergents and other cleaning agents necessary to perform his work that were produced outside of the State of New York.

56.    Plaintiff Guerrero work duties required neither discretion nor independent judgment.

57.    Throughout his employment with Defendants, Plaintiff Guerrero regularly worked in excess of 40 hours per week.

58.    During the years 2011 through 2017, Plaintiff Guerrero worked from approximately 8:00 a.m. until on or about 4:00 p.m. Mondays through Saturdays during the months of November through May  (typically 48 hours per week).

59.     During the years 2011 through 2017, Plaintiff Guerrero worked from approximately 7:30 or 8:00 a.m. until on or about 5:30 or 6:00 p.m. Mondays through Saturdays during the months of June through October (typically 57 to 63 hours per week).

60.     From approximately February 2011 until on or about October 2015, defendants paid Plaintiff Guerrero his wages by personal check.

61.     From approximately October 2015 until on or about February 2017, defendants paid Plaintiff Guerrero his wages in a combination of personal check and cash.

62.     From approximately February 2011 until on or about February 2013, defendants paid Plaintiff Guerrero a fixed salary of $570 per week.

63.     From approximately February 2013 until on or about February 2015, defendants paid Plaintiff Guerrero a fixed salary of $590 per week.

64.     From approximately February 2015 until on or about February 2017, defendants paid Plaintiff Guerrero a fixed salary of $610 per week.

65.     Plaintiff Guerrero's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

66.     In fact, Defendants required Plaintiff Guerrero to start working 30 minutes prior to his regular start time and continue working 1 and a half to two hours past his scheduled stop time almost every day during the months of June through October, and did not pay him for the extra time they required him to work.

67.     Plaintiff Guerrero was not required to keep track of his time, nor to his knowledge, did defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

68.     Instead, Plaintiff Guerrero was supposed to sign his name into a notebook at the time he arrived and when he departed work, but he rarely did so because he was a salaried employee.

69.     Defendants did not provide Plaintiff Guerrero with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

70.     Defendants never provided Plaintiff Guerrero with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

71.     Defendants never provided Plaintiff Guerrero with a written notice, in English and in Spanish (Plaintiff Guerrero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Javier Romero*

72.     Plaintiff Romero was employed by Defendants from approximately May 2013 until on or about February 18, 2017.

73.     At all relevant times, Plaintiff Romero was employed by Defendants to iron clothes.

74.     Plaintiff Romero regularly handled goods in interstate commerce, such as detergents and other cleaning agents necessary to perform his work that were produced outside of the State of New York.

75.     Plaintiff Romero's work duties required neither discretion nor independent judgment.

76.     Throughout his employment with Defendants, Plaintiff Romero regularly worked in excess of 40 hours per week.

77.     During the years 2013 through 2017, Plaintiff Romero worked from approximately 8:00 a.m. until on or about 4:00 p.m. Mondays through Saturdays during the months of October through May (typically 48 hours per week).

78.     During the years 2013 through 2017, Plaintiff Romero worked from approximately 7:30 or 8:00 a.m. until on or about 5:30 or 6:00 p.m. Mondays through Fridays, from approximately 8:00 a.m. until on or about 4:00 p.m. on Saturday during the months of June through October (typically 57 to 63 hours per week).

79.     Throughout his employment with defendants, Plaintiff Romero was paid his wages in cash.

80.     From approximately May 2013 until on or about June 2014, defendants paid Plaintiff Romero a fixed salary of $500 per week.

81.     From approximately July 2014 until on or about February 2017, defendants paid Plaintiff Romero a fixed salary of $520 per week.

82.     Plaintiff Romero's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

83.     In fact, Defendants required Plaintiff Romero to start working 30 minutes prior to his regular start time and continue working 1 and a half to two hours past his scheduled stop time almost every day during the months of June through October , and did not pay him for the extra time they required him to work.

84.     Plaintiff Romero was not required to keep track of his time, nor to his knowledge,

13

did defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

85.    Instead, Plaintiff Romero signed his name into a notebook at the time he arrived to work, but did not sign out when he departed.

86.    Defendants did not provide Plaintiff Romero with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

87.    Defendants never provided Plaintiff Romero with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

88.    Defendants never provided Plaintiff Romero with a written notice, in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

89.    Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them the proper minimum wage, overtime compensation or spread of hours pay.

90.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage, overtime or spread of hours compensation, as required by federal and state laws.

91.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

92.     Instead, defendants required plaintiffs to sign their name into a notebook at the time they arrived and departed from work, but Plaintiffs rarely did so because they were salaried employees.

93.     In addition, defendants either paid Plaintiffs their wages in cash or by personal check or a combination of personal check and cash.

94.     By employing these practices, Defendants avoided paying Plaintiffs at the minimum wage and overtime rate of time and a half for most or all of their hours worked per week.

95.     Defendants failed to post required wage and hour posters in the full service dry cleaner/laundromat, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

96.     Upon information and belief, these practices by Defendants were  done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

97.     Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices required by NYLL §§195(1) and 195(3).

98.     Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the  dates  of work covered by that payment of wages; name of employee; name of employer; address and phone  number  of employer;  rate  or rates of pay and basis thereof, whether paid by the hour, shift, day, week,  salary,  piece, commission,  or  other;  gross wages;  deductions;  allowances,  if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the  number  of overtime  hours  worked, as required by NYLL §195(3).

99.     Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year,  a statement in English and the employees' primary language, containing:  the rate or rates of pay and basis thereof,  whether  paid  by  the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the  regular  pay  day designated by  the  employer;  the  name  of  the  employer;  any "doing business  as"  names  used  by the employer; the physical address of the employer's main office or principal place of  business,  and a  mailing address  if  different;  and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

100.     Plaintiffs bring their FLSA minimum and overtime wages, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them,

on or after the date that is three years before the filing of the complaint in their case (the "FLSA

Class Period"), as employees of Defendants (the "FLSA Class").

101.    At all relevant times, Plaintiffs and other members of the FLSA Class who are

and/or have been similarly situated, have had substantially similar job requirements and pay

provisions, and have been subject to Defendants' common practices, policies, programs,

procedures, protocols and plans of willfully failing and refusing to pay them the required

minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty

(40) hours per workweek under the FLSA and willfully failing to keep records required by the

FLSA.

102.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

103.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth

herein.

104.    At all times relevant to this action, Defendants were Plaintiffs' employers within

the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to

hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the

rate and method of any compensation in exchange for their employment.

105.    At all times relevant to this action, Defendants were engaged in commerce or in

an industry or activity affecting commerce.

106.    Defendants constitute an enterprise within the meaning of the Fair Labor

Standards Act, 29 U.S.C. § 203 (r-s).

107.     Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

108.     Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

109.     Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

110.     Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

111.     At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have had the power to hire and fire Plaintiffs (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

112.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

113.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

114.     Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

115.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

116.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

117.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

118.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

119.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

120.    Defendants' failure to pay Plaintiffs the minimum wage was willful and without a good faith basis within the meaning of N.Y. Lab. Law § 663.

121.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### (VIOLATION OF THE OVERTIME PROVISIONS
### OF THE NEW YORK STATE LABOR LAWS)

122.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

19

123.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

124.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

125.    Defendants failed to pay Plaintiffs (and the FLSA Class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

126.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful and without a good faith basis within the meaning of N.Y. Lab. Law § 663.

127.     Plaintiffs (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

128.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

129.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 142-1.6.

130.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) an additional hour's pay for each day Plaintiffs' (and the FLSA Class members) spread of hours exceeded ten hours was willful and without a good faith basis within the meaning of New York Lab. Law § 663.

131.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

132.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

133.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

134.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

135.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

136.    Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

137.    Defendants are liable to each Plaintiff in the amount of $5,000, together with

costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)      Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)      Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)      Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)      Declaring that defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)      Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper

deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs (including the prospective collective class members)

liquidated damages in an amount equal to 100% of their damages for the amount of unpaid

minimum and overtime wages, and damages for any improper deductions or credits taken against

wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules

and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and

orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the Spread of Hours Wage Order of the New

York Commission of Labor as to Plaintiffs;

(k)    Declaring that defendants violated the notice and recordkeeping requirements of

the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits

taken against wages;

(l)    Declaring that Defendants' violations of the New York Labor Law and Spread of

Hours Wage Order were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime

wages, damages for any improper deductions or credits taken against wages, as well as awarding

spread of hours pay under the NYLL as applicable;

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and

recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages

pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs (including the prospective collective class members) pre-

judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorney's fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
February 28, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

_____/s/ Michael Faillace_____

By:    Michael A. Faillace [MF-8436]
       60 East 42nd Street, Suite 2540
       New York, New York 10165
       (212) 317-1200
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Javier Romero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     22 de febrero de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 17, 2017

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Daniel Guerrero

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           17 de febrero de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 17, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Leonel Cruz

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      *Leonel Cruz V.*

Date / Fecha:                           17 de febrero de 2017

*Certified as a minority-owned business in the State of New York*